# Illinois Official Reports

## Appellate Court

---

**People v. Sams**, 2013 IL App (1st) 121431

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT SAMS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1431 |
| Filed | December 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful use of a weapon by a felon was reversed outright, notwithstanding defendant's prior felony conviction and the discovery of a shotgun and ammunition near the scene of defendant's arrest, since the State failed to prove defendant knew of the presence of the weapon or exercised control over the area where it was found, defendant was not identified as the alleged offender by any of the witnesses who called for the police, no one observed defendant in possession of the weapon, and defendant did not live at the residence where the weapon was found. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-19883; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Sharifa Rahmany, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Haley Peck, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion.

## OPINION

¶ 1 Following a jury trial, defendant Robert Sams was convicted of unlawful use of a weapon by a felon and sentenced to two years' imprisonment. He now appeals his conviction, challenging both the sufficiency of the evidence and the admission of hearsay. We reverse his conviction outright, because the State failed to prove him guilty beyond a reasonable doubt.

¶ 2                                    BACKGROUND

¶ 3 Defendant moved *in limine* to exclude recordings of and reference to two 911 calls placed by unidentified callers, arguing that the calls' content constituted hearsay and the prejudicial effect outweighed any probative value. The trial court found that the calls fell under the excited utterance exception to the hearsay rule and denied defendant's motion.

¶ 4 The State presented three witnesses at trial. Michelle Smado, a 911 dispatcher, testified that she received two telephone calls after 7:20 p.m. on October 31, 2011. Over defendant's objection, the State played a recording of the calls for the jury. The first caller, an unidentified male, asked Smado to dispatch police to 611 Andover Street in Chicago Heights, Illinois. The caller did not describe why assistance was needed. The second caller, an unidentified woman, stated that a man had pointed a gun at her son at 611 Andover Street. She did not indicate, however, whether she was able to see the man or the gun or if she had simply received this information from another person. After repeated questioning by Smado, the caller stated that the person in possession of the gun was "Robert Senior," "the daddy," and "Robert Louis Sams." The caller gave no description of the person or the gun. Smado dispatched police to 611 Andover Street and relayed the information she had received.

¶ 5    Officer David Long testified that, on October 31, 2011, he and Officer Nick Giudotti responded to a call regarding a disturbance at 611 Andover Street. The dispatcher described neither the man nor the gun, but Long believed she may have provided a name, though he did not "a hundred percent recall." Upon arrival, Long observed a man crying and a woman screaming in the driveway. As Long spoke to the man and woman, defendant exited the residence and was arrested. Per a request from the man in the driveway, Long and Giudotti entered the home and checked on an elderly woman inside. As they left, they saw that the living room was in a state of disarray, and there was an apparent bloodstain on the couch. The homeowner arrived and consented to a search of the home. Upon reentering the home, Long saw a shotgun underneath the couch and a live shotgun round under an end table. He never saw defendant in possession of a gun. Long later learned that defendant did not reside at 611 Andover Street.

¶ 6    Detective Stuart Murtaugh testified that he and Detective Steve Bakowski responded to a call regarding a disturbance at 611 Andover Street. The dispatcher did not describe the gun or the person allegedly in possession of the gun. Defendant had already been arrested by the time Murtaugh arrived. Murtaugh was present when Officers Long and Giudotti reentered the residence and discovered a gun. He also entered the house and saw a bloodstain on the sofa and a shotgun underneath it, as well as an unfired shotgun shell underneath an end table. He photographed the scene and collected evidence. Murtaugh never saw defendant in possession of a gun.

¶ 7    The State rested after introducing a certified copy of defendant's previous attempted burglary conviction. Defendant presented no evidence. The jury found defendant guilty of unlawful possession of a weapon by a felon. The trial court sentenced him to two years' imprisonment and one year of mandatory supervised release. Defendant timely appealed.

¶ 8                                                      ANALYSIS

¶ 9    Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt. The State must prove each element of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *In re Winship*, 397 U.S. 358, 361-64 (1970). Where a defendant alleges on appeal that the State failed to meet this burden, a reviewing court, considering the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *Jackson*, 443 U.S. at 318-19. We must carefully examine the evidence, while considering that the trier of fact saw and heard the witnesses. *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

¶ 10    To sustain a conviction for unlawful possession of a weapon by a felon, the State must prove defendant (1) knowingly possessed a weapon, and (2) was previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2010); *People v. Rangel*, 163 Ill. App. 3d 730, 739 (1987). When a defendant is not found in actual possession of a weapon, the State must prove constructive possession. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. To establish constructive possession, the State must prove beyond a reasonable doubt that a defendant (1) knew a firearm was present; and (2) exercised immediate and exclusive control over the area

where the firearm was found. *Id.*; *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). The State may establish knowledge through evidence of a defendant's acts, declarations, or conduct, from which it may be inferred that he knew of the firearm's presence. *People v. Beverly*, 278 Ill. App. 3d 794, 798 (1996). A defendant's control over the location where a weapon is found gives rise to an inference that he possesses that weapon. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Habitation in the residence in which the firearm is found is sufficient evidence of control to establish constructive possession. *Id.*

¶ 11    Here, it is undisputed that defendant has a prior felony conviction. We turn, then, to whether the State established beyond a reasonable doubt that he knowingly possessed a weapon. We hold that the State failed to prove beyond a reasonable doubt that defendant knew of the firearm's presence and exercised immediate and exclusive control over the area in which it was found.

¶ 12    Two unidentified 911 callers led police to 611 Andover Street. The first merely requested police assistance, failing to explain what events, if any, required their presence. Although the second caller mentioned defendant's name and the presence of a gun, she did not describe the alleged offender or the gun, nor did she state whether she was witnessing the events she described or had merely heard about them second-hand. While this information may have been sufficient to support a *Terry* stop (see *People v. Ewing*, 377 Ill. App. 3d 585 (2007) (911 call supported *Terry* stop)), it was certainly insufficient to establish defendant's guilt beyond a reasonable doubt.

¶ 13    Nor does the testimony of Officer Long and Detective Murtaugh establish defendant's guilt. Neither officer observed defendant in actual possession of a weapon, and no physical evidence connected defendant to the gun. Their testimony was insufficient to establish constructive possession as well. They did not see defendant in the same room as the gun. Rather, their testimony shows only that defendant walked out of a house in which a gun was later found. Mere presence in the vicinity or access to the area in which contraband is found is insufficient to establish constructive possession. *Rangel*, 163 Ill. App. 3d at 739; *People v. Macias*, 299 Ill. App. 3d 480, 487 (1998).

¶ 14    Further, the evidence presented at trial showed that the gun was not easily visible or accessible. It was positioned under the couch, such that Long did not see it the first time he entered the home. It was only after gaining the homeowner's consent and reentering the home to conduct a search that the gun was discovered. There is therefore no proof that defendant knew of the gun's presence or exercised immediate and exclusive control over it. The State also conceded that defendant did not live at 611 Andover Street, but was merely visiting. See *Spencer*, 2012 IL App (1st) 102094, ¶ 17 (habitation in residence where firearm is found may show constructive possession).

¶ 15    In *People v. Wright*, 2013 IL App (1st) 111803, the State presented no physical evidence connecting the defendant to the gun, no witnesses who had seen the defendant holding a gun, and no evidence that the defendant lived at the residence. *Id.* ¶ 26. Rather, officers testified that defendant and another fled to the basement of a home at which the officers were executing a search warrant. *Id.* ¶¶ 11-12. After the two men fell down, the officers saw a gun protruding from underneath defendant. *Id.* ¶¶ 10-12. We reversed the defendant's aggravated unlawful

- 4 -

use of a weapon conviction, because the State failed to prove beyond a reasonable doubt that he knowingly possessed a gun. *Id.* ¶¶ 26, 30.

¶ 16    Here, as in *Wright*, the State presented no physical evidence connecting defendant to the gun, no witnesses who had seen defendant holding a gun, and no evidence that defendant lived at the residence. Unlike in *Wright*, the officers here never even saw defendant in the same room as the gun. In light of this evidence, we cannot say that the State met its burden of proving beyond a reasonable doubt that defendant had knowledge of the presence of the firearm or exercised immediate and exclusive control over the area where the firearm was found.

¶ 17    Given our conclusion that the State failed to meet its burden, we need not address defendant's hearsay argument.

¶ 18                                          CONCLUSION

¶ 19    For the forgoing reasons, we hold that the State failed to prove defendant guilty beyond a reasonable doubt of unlawful use of a weapon by a felon and reverse his conviction outright.

¶ 20    Reversed.