# Illinois Official Reports

## Appellate Court

---

### *People v. Moore*, 2020 IL App (1st) 182535

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL MOORE, Defendant-Appellant. |
| District & No. | First District, Sixth Division No. 1-18-2535 |
| Filed | May 1, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-3712; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. Cause remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, Mario Kladis, and Matthew M. Daniels, of State Appellate Defender's Office, of Chicago, for appellant. |
| | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel, and Jasmine Price, law student), for the People. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial, defendant Darrell Moore was found guilty of one count of possession of a controlled substance with intent to deliver and one count of possession of cannabis with intent to deliver and was sentenced to concurrent terms of four years' and three years' imprisonment, respectively. On appeal, defendant argues that (1) the trial court erred by failing to ask if the jurors understood the principles set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and (2) the evidence at trial was closely balanced. For the following reasons, we affirm defendant's controlled substance conviction, reverse his cannabis conviction, and remand for a new trial on that count.

¶ 2                              I. JURISDICTION
¶ 3    Defendant was sentenced on June 8, 2017, and he filed his notice of appeal that same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                              II. BACKGROUND
¶ 5    Defendant was charged by information with possession of 5 grams or more but less than 15 grams of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2016)) (count I), possession of 1 gram or more but less than 15 grams of a controlled substance with intent to deliver (*id.*) (count II), and possession of more than 10 grams but not more than 30 grams of cannabis with intent to deliver (720 ILCS 550/5(c) (West 2016)) (count III).

¶ 6    At the beginning of jury selection, the trial court told prospective jurors that it was "essential" to "understand" and "accept" that defendant was presumed innocent of the charges against him, that the State had to prove defendant guilty beyond a reasonable doubt, that defendant was not required to offer any evidence on his own behalf, and that if defendant did not testify, it could not be held against him. Throughout *voir dire*, the trial court apprised the various panels of prospective jurors of these principles and asked whether they "agree[d] with and accept[ed]" those propositions of law. All venire persons selected to the jury answered affirmatively.

¶ 7    At trial, Chicago police officer Gerardo Perez testified that on February 11, 2016, his team executed a search warrant at an apartment on the 8700 block of South Blackstone Avenue. When the officers arrived, they knocked on the building's front door and announced their presence. Perez heard noises behind the door, but no one answered, so the breach officer opened the door with a ram. Perez entered a vestibule where he observed a male standing on the first steps of the staircase leading to the second floor and two females a couple steps behind him. In court, Perez identified defendant as the male. Defendant looked at the officers, dropped

a plastic bag from his hand, and moved towards the door to the first-floor apartment. Perez grabbed defendant and handcuffed him.

¶ 8 Perez stayed with defendant in the vestibule, while other members of the search team entered the first-floor apartment. Perez observed that the plastic bag defendant dropped contained suspect cocaine, so he searched defendant's pockets and recovered one bag containing six smaller plastic bags of suspect cannabis and another bag containing suspect cannabis. Perez did not recover a needle, spoon, or pipe from defendant. In court, Perez identified People's Exhibit 1 as the bag of suspect cocaine defendant dropped in the vestibule, and People's Exhibits 2 and 3 as the bags of suspect cannabis he recovered searching defendant. Perez brought defendant into the first-floor apartment's living room.

¶ 9 On cross-examination, Perez testified that he was the first officer to enter the building. When Perez brought defendant to the living room, several adults and a baby were also there.

¶ 10 Chicago police officer Herbert Betancourt testified that after the officers knocked and announced themselves at the residence, he heard "individuals in the back running up and down the stairs or headed into the doorways." After entering the vestibule behind Perez, Betancourt observed defendant attempt to descend the stairs "as if going back into the [first-floor] apartment." Betancourt did not see contraband in defendant's hands, but after Perez directed Betancourt to look at the ground, Betancourt observed a plastic bag containing smaller knotted bags. Betancourt entered the first-floor apartment, where he saw approximately four adults and "some younger children." Betancourt searched the front bedroom. He recovered a letter from under an adult-sized bed dated January 25, 2016, and addressed to defendant at the Blackstone Avenue address.

¶ 11 On cross-examination, Betancourt testified that the letter referenced outstanding debt for parking violations. Betancourt also saw men's toiletries and men's clothing that "looked like [defendant's] size" in the residence. Betancourt did not find keys to the apartment or an identification bearing the Blackstone Avenue address on defendant, photographs of defendant, or utility bills or a lease with defendant's name.

¶ 12 Chicago police officer Michael Roman testified that he entered the vestibule behind Perez and Betancourt. After securing the residence, Roman searched the front bedroom, which contained an adult-sized bed and a smaller, child-sized bed. The room was "cluttered" with clothes, socks, diapers, toys, and "food bags," and he found a baby wipes container under the smaller bed. The baby wipes container held two bags of suspect cannabis, a bag of suspect crack cocaine, and a bag containing pills and approximately $1285. In court, Roman identified People's Exhibits 9 and 10, respectively, as the suspect crack cocaine and suspect cannabis recovered from the bedroom. Roman also recovered a small black scale and another bag containing "narcotics packaging, small ziplock baggies" in the bedroom. He did not find any paraphernalia for consuming cocaine or cannabis.

¶ 13 The State entered a stipulation that, if called, Laneen Blount, a chemist for the Illinois State Police, would testify that she analyzed People's Exhibits 1, 2, 3, 9, and 10. Blount found that Exhibit 1 comprised 50 bags of rock cocaine, weighing 5.2 grams, and 45 bags containing an estimated 4.7 grams of a similar substance that was not tested. Exhibit 2 contained 2.4 grams of cannabis from six bags, Exhibit 3 contained 4.5 grams of cannabis from one bag, Exhibit 9 contained 1.6 grams of rock cocaine from one bag, and Exhibit 10 contained 12.4 grams of cannabis from two bags.

¶ 14    The defense then entered a stipulation that, if called, the keeper of records at the Office of the Illinois Secretary of State would testify that an identification card was issued to defendant, listing an address on the 9200 block of South Wentworth Avenue on December 12, 2014, with an expiration date of March 3, 2020.

¶ 15    During the jury instruction conference, the State requested simple possession instructions for all three charges, where "a reasonable juror could *** think that there's not enough evidence of intent to deliver *** while still thinking the defendant is in actual and/or constructive possession for the narcotics recovered in the case." The defense objected, arguing that the State's position throughout trial had been based on defendant's alleged intent to deliver. The trial court denied the State's request.

¶ 16    The jury found defendant not guilty of count II for possession of 1 gram or more but less than 15 grams of a controlled substance with intent to deliver, but guilty of count I for possession of 5 grams or more but less than 15 grams of a controlled substance with intent to deliver and count III for possession of more than 10 grams but not more than 30 grams of cannabis with intent to deliver. Defendant filed a motion for a new trial, which the trial court denied. Following a sentencing hearing, the court sentenced defendant to concurrent terms of four years' and three years' imprisonment on counts I and III, respectively.

¶ 17                                    III. ANALYSIS

¶ 18    On appeal, defendant argues that he is entitled to a new trial because the trial court failed to ask the jurors if they understood the principles set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).

¶ 19    Defendant concedes that he forfeited review of this issue by failing to raise it in the trial court and by not including it in his posttrial motion. See *People v. Belknap*, 2014 IL 117094, ¶ 66 ("To preserve an alleged error for review, a defendant must both make an objection at trial and include the issue in a posttrial motion."). However, defendant asserts that we may review the issue for plain error. The plain error doctrine is a "narrow and limited exception" to the general forfeiture rule. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). It permits review of a forfeited claim when a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Our initial inquiry is to determine whether there was a clear or obvious error at trial. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 20    Rule 431(b) mandates that the trial court ask every prospective juror whether he or she "understands and accepts" four fundamental principles:

> "(1) that the defendant is presumed innocent of the charge(s) against him ***; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his *** own behalf; and (4) that if a defendant does not testify it cannot be held against him ***." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

A court must strictly comply with these admonishments. *People v. Thompson*, 238 Ill. 2d 598, 607 (2010).

¶ 21 Defendant contends, and the State concedes, that the trial court did not expressly ask the prospective jurors whether they both understood and accepted the principles set forth in Rule 431(b). We agree that the trial court's admonishments violated the rule, as the record demonstrates that the court asked only if the jurors "agree[d] with and accept[ed]" the principles. As such, the trial court committed a clear error. See *People v. Wilmington*, 2013 IL 112938, ¶ 32 ("[T]he trial court's failure to ask jurors if they *understood* the four Rule 431(b) principles is error in and of itself." (Emphasis in original.)). Our supreme court has recognized that a Rule 431(b) violation is generally "not cognizable under the second prong of the plain error doctrine." *Sebby*, 2017 IL 119445, ¶ 52. Therefore, defendant's unpreserved claim alleging a Rule 431(b) violation is limited to the first prong of the plain error analysis, and relief will be granted only if we find that the evidence was closely balanced. *Id.*

¶ 22 Defendant asserts that the evidence as to both offenses was closely balanced. Whether the evidence was closely balanced "depends upon the quantum of evidence presented by the State against the defendant." *People v. Herron*, 215 Ill. 2d 167, 193 (2005). The reviewing court must conduct a "qualitative, commonsense assessment" of the evidence based on the totality of the circumstances. *Sebby*, 2017 IL 119445, ¶ 53. This assessment deals not with the sufficiency of close evidence, but with "the closeness of sufficient evidence." *Id.* ¶ 60.

¶ 23 To convict defendant under count I, the State was required to prove that he knowingly possessed with the intent to deliver "1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof." 720 ILCS 570/401(c)(2) (West 2016). To convict defendant under count III, the State was required to prove that he knowingly possessed with the intent to deliver "more than 10 grams but not more than 30 grams of any substance containing cannabis." 720 ILCS 550/5(c) (West 2016).

¶ 24 As to count I, Perez testified that defendant dropped a plastic bag of suspect cocaine from his hand in the vestibule outside the first-floor apartment. Perez then searched defendant and recovered another bag containing six smaller bags of suspect cannabis and an additional bag with suspect cannabis. Blount's stipulated testimony established that the bag defendant dropped in the vestibule contained 95 bags, comprising 50 bags of rock cocaine totaling 5.2 grams and another 45 bags with 4.7 grams of a similar substance that was not tested. Blount also found that the bags Perez recovered from defendant's person contained a total 6.9 grams of cannabis. This evidence overwhelmingly established that defendant knowingly possessed the drugs recovered in the vestibule. See *People v. Ray*, 232 Ill. App. 3d 459, 461 (1992) ("The act of dominion may be that defendant had the contraband on his person, that he tried to conceal it, or that he was seen throwing it away."). The evidence also strongly supports the conclusion that defendant intended to deliver the drugs. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995) (factors probative of intent to deliver include "whether the quantity of controlled substance in [a] defendant's possession is too large to be viewed as being for personal consumption" and "the manner in which the substance is packaged"). We find that the evidence was not close as to defendant's conviction on count I, which alleged he possessed 5 grams or more but less than 15 grams of a controlled substance with intent to deliver. Therefore, defendant's conviction on count I is affirmed.

¶ 25 However, the 6.9 grams of cannabis recovered on defendant's person is insufficient to support his conviction on count III for possession of more than 10 grams but not more than 30 grams of cannabis with intent to deliver. See 720 ILCS 550/5(c) (West 2016). In conducting

plain error analysis as to count III, we must also consider the closeness of the evidence regarding defendant's possession of the cannabis recovered from the bedroom.

¶ 26 Since defendant did not have actual physical possession of the cannabis found in the bedroom, the State must prove constructive possession. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession exists if defendant has (1) knowledge of the contraband and (2) immediate and exclusive control over the area where the contraband is found. *Id.* Both elements are often proved by circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Knowledge is shown through defendant's acts, declarations, or conduct from which we can infer that he knew the contraband existed in the place where it was found. *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10. Control may be inferred where defendant has the capability and intent to maintain dominion over the contraband, even if he lacks personal present dominion over it. *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 47. "Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show defendant lived on the premises where narcotics are found and, therefore, controlled them for purposes of establishing constructive possession of narcotics." *People v. Scott*, 367 Ill. App. 3d 283, 286 (2006).

¶ 27 We find that the evidence as to defendant's constructive possession of the cannabis in the bedroom was close. In favor of the State, both Perez and Betancourt testified that defendant moved towards the first-floor apartment door when he saw the officers. In that apartment's front bedroom, officers found the drugs at issue and a January 2016 letter addressed to defendant at the Blackstone Avenue address. Betancourt testified that he observed men's toiletries and clothing that appeared to be defendant's size within the apartment. Additionally, the drugs found in the vestibule were packaged similarly to those that were found in the front bedroom in that they were in plastic bags.

¶ 28 Notwithstanding, other factors weighed against defendant's constructive possession. No evidence showed that defendant had a key to the apartment in which the drugs were found, and defendant entered a stipulation that the Office of the Illinois Secretary of State issued an identification card to him listing a different address than the apartment, which was valid on the date of arrest. Although the drugs and the letter were found in the same bedroom, the drugs were located under a different, child-sized bed. No testimony established that the men's toiletries or clothing observed by Betancourt were in the bedroom where the drugs and letter were found, nor was there testimony concerning who lived in the apartment. Moreover, no testimony specifically linked any distinguishing features of the packaging of the drugs in the vestibule to the packaging of the drugs in the bedroom.

¶ 29 Based upon this record, the totality of the evidence as to defendant's constructive possession of the cannabis in the bedroom was closely balanced. Where the trial evidence was close, a clear violation of Rule 431(b) is reversible error under the first prong of plain error analysis. *Sebby*, 2017 IL 119445, ¶ 78. Thus, we reverse defendant's conviction on count III and remand for a new trial on that count. Since we find that the State presented sufficient evidence to sustain defendant's conviction, a retrial will not subject defendant to double jeopardy. See *People v. Miller*, 2013 IL App (1st) 110879, ¶ 87 (citing *People v. Taylor*, 76 Ill. 2d 289, 309 (1979)).

¶ 30                          IV. CONCLUSION

¶ 31          For the foregoing reasons, we affirm in part, reverse in part, and remand for a new trial on count III.

¶ 32          Affirmed in part and reversed in part.

¶ 33          Cause remanded.