**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180369-U

Order filed November 30, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0369 Circuit No. 17-CF-619 |
| RONNIE B. NELSON, | ) ) ) | Honorable Paul P. Gilfillan |
| Defendant-Appellant. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justice Wright concurred in the judgment.
Justice Carter dissented.

_____

**ORDER**

¶ 1  *Held*:  Trial court did not err when he admonished defendant regarding his waiver of counsel. Posttrial counsel did not provide ineffective assistance. The evidence was insufficient to sustain defendant's convictions.

¶ 2  Defendant Ronnie B. Nelson was charged with two counts of unlawful possession of a weapon by a felon. He represented himself at a jury trial and was convicted of both counts and sentenced to 8½ years' imprisonment. Nelson appealed. We reverse his convictions.

¶ 3                                                    FACTS

¶ 4        Defendant Ronnie Nelson was indicted on two counts of unlawful possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West 2018). He made a video appearance in court, and in response to the trial court's inquiry as to whether Nelson would hire private counsel or wanted court appointed counsel, Nelson said he wanted to represent himself. The court determined that Nelson should appear in person to address his representation because of the importance of the decision.

¶ 5        Nelson appeared in court in person the following week. The trial court admonished him regarding the charged offenses and their penalty ranges, which Nelson indicated he understood. The trial court advised Nelson of his constitutional rights to represent himself, to hire counsel or to have counsel appointed for him. The court further informed Nelson that if he represented himself at trial, he would be at a disadvantage because opposing counsel would be familiar with the court procedures and rules and the law. The court also told Nelson that if he opted to represent himself he would not be able to later complain he should have had an attorney represent him and that the court was not obligated to help him in any fashion during the trial. Nelson indicated he understood the court's admonitions.

¶ 6        The court then questioned Nelson regarding his background and education and discovered that Nelson attended school until the 12th grade but did not graduate and had not represented himself in any prior proceedings. Nelson said he was comfortable representing himself despite a lack of experience. The court reiterated that Nelson's 12th grade education would put him at a disadvantage at trial and that most people, including the court, would recommend that Nelson not represent himself. In response, Nelson indicated it was his free, full and voluntary decision to

represent himself. The court then made a finding that Nelson "knowingly and willingly made this decision" to waive his right to counsel.

¶ 7 At a hearing on November 30, 2017, Nelson told the court he was going to file motions and sought a continuance. The court granted the continuance over the State's objection and placed a December 11, 2017, deadline for Nelson to file any motions. A December 11, 2017, status hearing indicated Nelson had not filed any documents.

¶ 8 The jury trial was scheduled to begin in February 2018, at which time Nelson sought another continuance to review discovery. He explained that he needed to file motions for witnesses and subpoenas. He also said that he filed a motion for a speedy trial but that he never received it because it did not go through. The trial court denied his request to continue because the trial was scheduled to begin. Nelson then announced "ready" but asked to orally provide a witness list because of his inability to spell. In response to the court's inquiry, Nelson said he could barely spell and read but he was able to write. The trial began.

¶ 9 Todd Leach testified for the State. He was a member of the Peoria Police Department's target defender unit and served as the video officer at the execution of a search warrant at 812 South Matthew Street in Peoria. Nelson had been observed at that location, left the house before the warrant was executed, was arrested at another location, and then brought back to 812 South Matthew Street in order to secure a dog that was present. The video Leach took during the search was admitted without objection. On cross-examination, Nelson asked improper questions and ended his inquiry.

¶ 10 Brian Grice, a Peoria police officer assigned to the target defender unit as a gang intelligence officer, testified. He participated in the search warrant execution and found prescription bottles with Nelson's name on them and a black duffel bag filled with guns and

3

ammunition at the house. Excerpts from the search video were played for the jury and showed the location of the bottles and bag. The bottles were found on the first floor and the bag was found in the basement crawl space. On cross-examination, Nelson asked if his address was on the pill bottles, which Grice could not recall. Grice explained the prescription bottles were found in an entertainment center in a room on the first floor of the house. After Nelson asked another question, the State objected, and the court sustained the objection. Nelson stated, "I'm sorry. I'm not using big enough words. You know what I mean?" and ended the cross-examination.

¶ 11 Scott Bowers, a Peoria police officer in the crime scene unit, testified. He served on the warrant team and collected the duffel bag from the basement. The bag was filled with handguns and rounds of ammunition. The State's exhibits, which included the duffel bag, a Lorcin .38-caliber handgun, Lorcin 9-millimeter handgun and a Jennings .38-caliber handgun, were admitted into evidence without objection. On cross-examination, Nelson asked Bowers about several uncharged offenses.

¶ 12 Jerry James Jr. testified. He was a patrol officer in the Peoria Police Department and responded to a call on June 1, 2017, involving a gunshot victim at 710 South Blaine Street in Peoria. James identified Nelson as the individual who sustained a gunshot wound to his right foot. A shell casing was recovered on the steps of the porch where Nelson was shot. Nelson did not cross-examine James.

¶ 13 Brittany Martzluf, a crime scene unit officer with the Peoria Police Department, testified. She responded to the June 1 shooting incident. She identified Nelson as the person who suffered the gunshot wound. She photographed the area, including a bloody shoe and clothing and the shell casing. Nelson did not ask any questions in cross-examination.

¶ 14    Jason List, a firearm identification specialist with the Illinois State Police who worked at the Morton Forensic Science Lab, testified as a firearm identification expert. In his opinion, the shell casing found on the porch on South Blaine Street, was fired from the Lorcin .38-caliber handgun found during the search. Nelson attempted to cross-examine List as to whether there were any fingerprints found, the State objected, the court sustained the objection, and cross-examination ceased.

¶ 15    The State entered into evidence certified copies of Nelson's prior convictions for burglary and unlawful possession of a controlled substance and rested.

¶ 16    Nelson informed the court he had no witnesses and the court asked Nelson whether he was going to testify. Nelson replied that he would testify and took the stand. After Nelson attempted to ask questions of the State, the court told him that he needed to testify about the facts of the case. The State objected to his next attempt at questioning and Nelson then informed the court he did not want to testify. Nelson said, "I just want to wait until it's time for me to talk again. I don't want to agree with nothin' [sic]." The defense rested.

¶ 17    The jury instruction conference took place. Initially, Nelson participated in the conference, stating, "I don't understand what it means," "I'm not understanding," and "Can you explain it to me?" before ultimately conceding with "no objection" to each instruction offered by the State.

¶ 18    Closing arguments took place. Nelson argued that the prescription bottle was at 812 South Matthew Street because he had been shot; he did not shoot himself; and there was no evidence of surveillance of him arriving at and leaving from 812 South Matthew Street. In rebuttal, the State suggested that Nelson did shoot himself and possessed a weapon "not only on June 1st but on June 16th." Nelson asked the court why the State received two chances to talk to the jury, arguing it did

not prove its case. The court accepted Nelson's argument as a motion for a directed verdict and denied it. After deliberations, the jury found Nelson guilty on both counts.

¶ 19    The court appointed counsel to handle posttrial matters. At a June 1, 2018, hearing, defense counsel sought a continuance based on his review of the proceedings. Counsel stated that a "valid question may exist as to the circumstances surrounding the attorney waiver" and sought the transcripts of the waiver hearing. A June 6, 2018, hearing took place on posttrial motions and sentencing. Defense counsel notified the court that it understood the court's ruling on Nelson's request to waive counsel, stating the court was not in a position to rule differently "at that point." In counsel's view, nothing extraordinary happened prior to or during the waiver hearing that would indicate Nelson's motion to self-represent should have been denied. However, counsel argued that Nelson's educational circumstances, mental mechanics and his performance during the trial should have alerted the court that Nelson was incapable of reasonably representing himself. Defense counsel declared that the trial court should have stopped the trial and appointed counsel for Nelson or declared a mistrial and appointed counsel for the retrial. The State recalled that Nelson was aware of the consequences of representing himself and that the court discussed Nelson's educational background prior to accepting his waiver of counsel.

¶ 20    The trial court reached the same conclusion that it reached at the waiver hearing, finding that Nelson knowingly, voluntarily and understandably made the decision to waive counsel. The court denied Nelson's motion for a new trial and proceeded to sentencing. The court sentenced Nelson to 8½ years' imprisonment on the unlawful possession of a weapon charge to run concurrent with a sentence for an unrelated domestic battery. Nelson moved for reconsideration, which the trial court denied. Nelson timely appealed.

¶ 21                                    ANALYSIS

6

¶ 22 Nelson raises three issues on appeal. The first issue is whether the trial court improperly admonished Nelson regarding his right to counsel. The second issue is whether Nelson received ineffective assistance of posttrial counsel. The third issue is whether the evidence was sufficient to convict Nelson.

¶ 23 The first issue concerns the trial court's admonishments to Nelson regarding his right to counsel. Nelson argues that his waiver of his right to counsel was improper in that the court failed to inquire as to whether the waiver was intelligently made. He urges this court to consider the issue under plain error review if it determines that he did not properly preserve the issue.

¶ 24 To preserve an error for review, a party must object at trial and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. If both actions do not occur, the defendant has forfeited the issue. *Id.* However, the plain error doctrine allows review of unpreserved errors in two instances: whether the evidence is closely balanced and the error threatens to tip the scales of justice against the defendant or the error was so serious that it threatened the fairness of the trial and the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Before the court may employ plain error review, there must first be a clear and obvious error. *Id.*

¶ 25 Nelson did not object to the waiver of his right to counsel during the trial. He did not raise the issue in a posttrial motion. He thus forfeited review unless plain error applies. To decide if plain error review is appropriate, our first step is to determine whether an error occurred.

¶ 26 An accused is guaranteed the right to the assistance of counsel and the right to proceed without counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. A defendant may waive his right to the assistance of counsel if the waiver is made voluntarily, knowingly and intelligently. *People v. Wright*, 2017 IL 119561, ¶ 39. The trial court may consider the decision to waive counsel unwise but the defendant's decision to self-represent "must be honored out of 'that respect for the

individual which is the lifeblood of the law.' " *Id.* (quoting *People v. Silagy*, 101 Ill. 2d 147, 179-80 (1984)). To decide if the defendant intelligently waived his right to counsel, the court looks at the particular facts and circumstances of the case, including the defendant's background, experience and conduct. *People v. Lego*, 168 Ill. 2d 561, 565 (1995). A trial court's determination regarding a waiver of counsel is reviewed for an abuse of discretion. *People v. Harrison*, 2018 IL App (3d) 150419, ¶ 11.

¶ 27 If a party wishes to waive counsel, he must do it in open court, and if the party is subject to imprisonment as punishment, the court must inform the defendant and determine he understands as follows:

> "(1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

The purpose of Rule 401(a) is to ensure that a defendant's waiver of counsel is made knowingly and intelligently. *People v. Haynes*, 174 Ill. 2d 204, 241 (1996). Whether a trial court complied with the directives of Illinois Supreme Court Rule 401 is reviewed *de novo*. *Harrison*, 2018 IL App (3d) 150419, ¶ 11.

¶ 28 The trial court admonished Nelson in accord with Rule 401(a), informing Nelson of the charges against him, the minimum and maximum penalties for each offense, and his rights to counsel and to have counsel appointed. The court further admonished Nelson that he would be at a disadvantage if he were to represent himself as the state's attorney was experienced in a criminal

8

courtroom and knowledgeable about the law. The court also told Nelson that he would not be able to complain after the trial that his representation was ineffective and that the court would not give him special assistance during the trial. The court inquired into Nelson's educational background and legal experience. Nelson indicated he attended school until the 12th grade but did not graduate. The court reiterated Nelson would be at a disadvantage and suggested to Nelson that most people, including the court, would recommend he not represent himself. Despite the court's admonishments and expressions of concern, Nelson stated that his waiver was free, full and voluntary. The trial court found that Nelson knowingly and willingly waived assistance of counsel.

¶ 29        Nelson maintains that the court did not find his waiver was intelligently made, nor could it have been because he was unable to understand the nature of the proceedings or his waiver. In Nelson's view, his conduct during trial informed the court that his waiver was not intelligently made. However, Nelson's post-waiver conduct is not at issue. As posttrial counsel determined, at the time the trial court granted Nelson's waiver of his right to the assistance of counsel, there was nothing extraordinary about Nelson's seeming ability to represent himself that would call the waiver into question. The court complied with the requirements of Rule 401(a). The court was not required to specify that Nelson's waiver was "intelligently" made where the waiver discussion as a whole established Nelson intelligently waived counsel. In addition, the trial court commented several times in attempts to dissuade Nelson from waiving his right to counsel, but Nelson persisted in his request to proceed *pro se*. We find the trial court's admonishments regarding Nelson's waiver of counsel were proper. Accordingly, there was no clear and obvious error, plain error review is not appropriate, and this issue is forfeited.

¶ 30        The next issue is whether posttrial counsel provided ineffective assistance. Nelson complains that his posttrial counsel provided ineffective assistance in conceding the issue of the

9

adequacy of his waiver of counsel. He submits that the record establishes that the trial court did not make a finding that the waiver was intelligently made and posttrial counsel's failure to pursue the issue amounted to ineffective assistance.

¶ 31    To establish ineffective assistance of counsel, a defendant must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). It is not ineffective assistance where counsel fails to file a motion that lacks a reasonable chance of success. *People v. Hunter*, 2013 IL App (3d) 110310, ¶ 10. This court reviews a claim of ineffective assistance raised first on appeal *de novo*. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25.

¶ 32    Posttrial counsel initially questioned the validity of Nelson's waiver, but after reading the transcripts and researching the issue, counsel concluded and conceded that the waiver was proper. Counsel specifically noted to the court that at the time the waiver was offered and accepted, there was nothing out of the ordinary that would have alerted the court that Nelson was incapable of representing himself. Based on counsel's conclusion that waiver was proper, which was supported by the evidence, there was no reason to challenge it. We find posttrial counsel did not provide ineffective assistance.

¶ 33    The final issue is whether the evidence was sufficient to sustain Nelson's conviction. He argues the evidence was insufficient to prove him guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon.

¶ 34    On a challenge to the sufficiency of the evidence, the question before the court is whether, viewing the evidence in a light most favorable to the State, any rational trier of fact would find the essential elements of the offense proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Where circumstantial evidence is used to sustain a conviction, the factfinder does

not need to be convinced beyond a reasonable doubt of every link in the circumstantial chain where the evidence as a whole satisfies the factfinder that the defendant is guilty beyond a reasonable doubt. *People v. Milka*, 211 Ill. 2d 150, 178 (2004) (citing *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). When considering a sufficiency of the evidence challenge, the reviewing court does not retry the defendant. *Id.* This court will reverse a trial court on the sufficiency of the evidence only where the evidence is so improbable or unsatisfactory that a reasonable doubt remains as to the defendant's guilt. *Collins*, 106 Ill. 2d at 261.

¶ 35　　　　A felon may not knowingly possess a firearm "on or about his person or on his land or in his own abode or fixed place of business." 720 ILCS 5/24-1.1(a) (West 2018). To sustain a conviction for unlawful possession of a weapon by a felon, the State must prove (1) defendant had a prior felony conviction and (2) knowingly possessed a firearm. *People v. Adams*, 388 Ill. App. 3d 762, 766 (2009). Possession may be actual or constructive; "constructive possession may be inferred from the facts." *Id.* To prove constructive possession, the State must establish the defendant (1) had knowledge of the weapon's presence and (2) exercised immediate and exclusive control over the area where the weapon was discovered. *People v. Spencer*, 2012 IL App (1st ) 102094, ¶ 17. The defendant's mere presence in the vicinity of or access to the area where contraband is discovered is not sufficient to establish constructive possession. *People v. Rangel*, 163 Ill. App. 3d 730, 739 (1987).

¶ 36　　　　We agree with Nelson that the State's evidence was insufficient to convict him. The only direct connection between Nelson and the location where the guns and ammunition were found was the prescription bottles with his name on it. As elicited at trial, although his name was on the bottles, there was no testimony regarding the address on the bottles. In the video of the "search warrant execution," the pill bottles showed an address on Linwood. Nelson acknowledged he spent

11

time at the 812 South Matthew Street house. According to the State, Nelson was seen coming and going from the house; it is feasible he left his pills there while he ran out for something while visiting the home's residents. The State offered no evidence who lived at 812 South Matthew Street. Nelson did not deny that they were his pills but their presence at 812 South Matthew Street, which Nelson admittedly frequented, does not establish anything more than he left his prescription bottles there.

¶ 37 The other evidence the State presented regarding Nelson's connection to the location was that he was surveilled coming and going from the property. However, other than the officer's assertion regarding the surveillance and Nelson's comings and goings, no evidence was presented as to any details regarding the surveillance or when Nelson was at or left the house. The pill bottles were found on an entertainment center on the first floor of the house as established in the video and by testimony. In contrast, the duffel bag of weapons and ammunition was found in the basement crawl space. The State did not offer any evidence that the defendant had handled the duffle bag or its contents or that he had been in the basement or crawl space when he visited the South Matthew house. It is entirely feasible that Nelson stayed on the first floor where he left his pill bottles. The State did not establish anything to the contrary. Significantly, Nelson was not arrested at the South Matthew Street house but at another unnamed location and the State did not demonstrate that Nelson lived at the house on South Matthew Street. There was no mail, clothing, or any other evidence presented that the South Matthew Street house was Nelson's abode. As noted above, the State failed to offer any proof regarding who lived at 812 South Matthew Street.

¶ 38 The State's additional evidence does not support the conviction. The State presented evidence that the shell casing from the 710 South Blaine Street location came from one of the guns found at the South Matthew Street house. However, the State does not tie the two facts together

12

sufficient to prove Nelson possessed the gun which was used to shoot him or any of the other recovered weapons. Although the State theorizes that Nelson shot himself in the foot, hid the gun, later brought the gun to the South Matthew Street location and stored it in the crawl space, it does not present any evidence that Nelson actually shot himself, other than speculation. In fact, the State presented conflicting theories regarding the shooting at South Blaine Street. In opening argument, the State said the gun found at the South Matthew Street house was the same gun used when Nelson "got shot in the foot on June 1st." Neither of the two officers who responded to the shooting testified that Nelson shot himself or that a gun was discovered at the scene. Without that part of the puzzle, the State's theory falls apart. Anyone who visited the South Matthew Street house could have shot Nelson and hid the guns. The State did not prove it was Nelson. We find that the evidence was not sufficient to convict him and reverse his convictions for unlawful possession of a weapon by a felon.

¶ 39   The dissent objects to the majority's conclusion that the evidence was insufficient to convict and would instead affirm Nelson's convictions. The dissent considers that the evidence established possession. It relies on the fact that Nelson was at the South Matthew Street house at some point, and although there is no testimony regarding the time elements, concludes that Nelson was arrested as the search was occurring or just before the warrant was executed. As discussed above, the State did not provide any information regarding the surveillance or when Nelson was returned to the location other than that both events occurred. The dissent also relies on the discovery of the guns and ammunition in a bag in the basement crawl space as proof of possession but the defendant's alleged presence in the house was established only by the pill bottles discovered on the first floor. There was no suggestion he lived at the house or spent any time in the basement.

13

¶ 40    Similarly, the dissent finds the fact that Nelson was shot by one of the guns definitive. Although the dissent states the shooting occurred "apparently at another location," (*infra.* ¶ 50) the undisputed evidence presented by the State established Nelson was shot at 710 South Blaine and no evidence demonstrated that he was the shooter. The fact that Nelson was shot by someone with one of the guns does not connect him to the gun. Lastly, the dissent finds the fact that Nelson's pill bottles showed an address different than 812 South Matthew Street insignificant and concludes despite the different address attributed to Nelson that he possessed the guns discovered at 812 South Matthew Street. In our view, this evidence is insufficient to convict.

¶ 41    The dissent also challenges our application of the *Collins* standard, complaining that we allowed all reasonable inferences in favor of Nelson. Application of the *Collins* standard does not relieve the State of its obligation to present evidence on each element of the offense. In the instant case, there was no evidence that Nelson resided at the address where the guns were found. Likewise, because there was no evidence presented that Nelson was in actual possession of the weapons, the State had to provide sufficient evidence that the defendant had constructive possession of the weapons to sustain the convictions. The reasonable inferences in this case do not lead to the conclusion that Nelson possessed the weapons discovered at 812 South Matthew Street. From the evidence presented, we may infer that Nelson was at the house at some unknown time, left his prescription bottles there, and was shot on a prior occasion by an unknown person with one of the guns discovered in the basement crawl space. None of this evidence established that Nelson possessed a firearm.

¶ 42    In *People v. Walker*, 2020 IL App (1st) 162305, ¶ 5, the police executed a search warrant at a home where the defendant was discovered in a makeshift bed in the dining room. Two boxes of ammunition were discovered in a dresser drawer in a bedroom that had been occupied by other

14

individuals when the warrant was served. *Id.* A police officer testified for the State that the defendant admitted the bullets belonged to him, although he denied the admission. *Id.* ¶ 6. The defense presented evidence that the defendant did not live at the searched address, including mail addressed to the defendant elsewhere and witness testimony. *Id.* ¶¶ 9, 11. The reviewing court found the evidence insufficient to convict. *Id.* ¶ 25. The defendant was asleep in a different room from where the bullets were discovered, they were in a dresser drawer and not in plain view, there were other individuals in the room where the bullets were found, and there was nothing to link the defendant to the residence, such as mail or clothing. *Id.*

¶ 43    In *People v. Sams*, 2013 IL App (1st) 121431, ¶ 4, the police responded to a residence based on two anonymous 911 calls. The second caller said a man pointed a gun at her son and identified the defendant as the assailant. *Id.* The police arrested the defendant as he exited the house. *Id.* ¶ 5. Inside the house, the police discovered a shotgun concealed under the couch and ammunition under an end table. *Id.* ¶¶ 5-6. The reviewing court found the evidence was insufficient to convict. *Id.* ¶ 11. It discounted the 911 calls as lacking detailed information, noted the police did not see the defendant in the same room as the gun and he was not in the house when the gun was discovered. *Id.* ¶¶ 12-13. The gun was not visible or accessible to the defendant, the State lacked proof that he was aware of the gun or exercised control over it, and the State conceded the defendant was a visitor at the house. *Id.* ¶ 14.

¶ 44    In *People v. Wright*, 2013 IL App (1st) 111803, ¶¶ 6-7, the defendant and another man ran from the room when the police entered the house to execute a warrant, fell down the basement stairs, and landed in a pile at the bottom where a gun was discovered under the defendant. The reviewing court reversed the defendant's conviction, finding the evidence was insufficient to establish that the defendant possessed the weapon. *Id.* ¶ 26. No witnesses saw the defendant with

15

the gun, no physical evidence linked him to the gun, another person fell down the stairs with the defendant, three other people were in the basement, and the defendant demonstrated he lived elsewhere. *Id.*

¶ 45    As in *Walker, Sams* and *Wright*, the connection the State attempted to demonstrate between Nelson and the guns was too tenuous to establish constructive possession. As here, the evidence in those cases was insufficient to convict because it did not establish the defendant knew of the weapons or exercised immediate and exclusive control over them. The guns were discovered concealed in a duffel bag stashed in the crawl space in the basement. The pill bottles were found on the first floor. Nelson was not at the house when the warrant was executed. Nelson denied he lived at 812 South Matthew Street, the address on the pill bottles supported his denial, and the State did not present any evidence to establish Nelson lived there. There was no physical evidence linking Nelson to the discovered weapons except that one of the guns was used to shoot him on a prior occasion and at a different location. Therefore, the convictions must be reversed.

¶ 46                                    CONCLUSION

¶ 47    For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed.

¶ 48    Reversed.

¶ 49    JUSTICE CARTER, dissenting.

¶ 50    I respectfully dissent from the majority's decision in the present case. Applying the *Collins* standard, I would find that the evidence was sufficient to prove defendant guilty of both counts of unlawful possession of a weapon by a felon. See *Collins*, 106 Ill. 2d at 261. As to the possession element of the offenses, the evidence in this case showed that: (1) prior to the execution of the search warrant, defendant was at the residence to be searched but left the premises before the search warrant was executed; (2) as the search warrant was being executed, or just before,

16

defendant was arrested at another location and brought back to the residence to be searched to secure a dog that was present at the residence; (3) during the search of the premises, the police officers found three guns and ammunition in a duffel bag in the basement crawl space of the residence; (4) defendant had been shot in the foot by one of those guns a few weeks earlier, apparently at another location; and (5) prescription bottles with defendant's name on them, but with a different residence address listed, were also found during the search in an entertainment center in a room on the first floor of the residence. In my opinion, viewing that evidence in the light most favorable to the State, a rational trier of fact could have found the possession element of the offenses proven beyond a reasonable doubt. See *id.* I would, therefore, uphold the trial court's judgment. See *id.*

¶ 51        In reaching a conclusion to the contrary, the majority, respectfully, in my opinion, makes two errors. First, although the majority asserts that the State presented conflicting theories about the shooting at South Blaine Street, my reading of the record in this case is that the State was entirely consistent at defendant's jury trial in claiming that defendant had shot himself in the foot during the prior incident. The inconsistency to which the majority refers is apparently a position the State took at a prior hearing where it indicated the defendant may have been shot by someone else. That other theory, however, was not presented by the State at defendant's jury trial.

¶ 52        Second, with all due respect, the majority fails to properly apply the *Collins* standard. In this particular case, based upon the evidence presented at trial, reasonable inferences could be drawn in favor of the State and a finding of possession or in favor of defendant and a finding against possession. Instead of allowing all reasonable inferences in favor of the prosecution, as the *Collins* standard requires (see *People v. Bush*, 214 Ill. 2d 318, 326 (2005)), the majority adopts those inferences that favor defendant and uses those inferences to suggest possible innocent

17

explanations for the evidence of possession. In addition, the case law cited by the majority is not particularly helpful here as none of the cases relied upon by the majority have a fact pattern that is similar to the present case—where a person is shot in the foot at one location; the gun that the person was shot with is found at another location, along with that person's prescription medicine; prior to a search warrant being executed at the residence where the gun is found, the person is seen at that residence; and the person is brought back to the residence at the time of the search warrant to help secure a dog at the residence. Indeed, it is that unique fact pattern that gives rise here to a reasonable inference of constructive possession. Contrary to the majority's statement of the *Collins* standard, the question is not whether any rational trier of fact "would" find the essential elements of the offense proven beyond a reasonable doubt but whether any rational trier of fact "could" so find. See *Collins*, 106 Ill. 2d at 261.

¶ 53        For the reasons stated, therefore, I respectfully dissent from the majority's decision in the present case. I would affirm defendant's convictions.